Filed 3/28/24  Bethesda University v. Cho CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BETHESDA UNIVERSITY et al., | |
| Plaintiffs and Appellants, | G062514 |
| v. | (Super. Ct. No. 30-2022-01276823) |
| SEUNGJE CHO et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.

Quinn Emanuel Urquhart & Sullivan, Derek L. Shaffer, Crystal Nix-Hines, Christopher Tayback and Sage R. Vanden Heuvel for Plaintiffs and Appellants.

Kring & Chung, Kenneth W. Chung and Matthew A. Reynolds for Defendants and Respondents.

\*          \*          \*

This case is about two groups, each of which claims to be the legitimate board of directors of Bethesda University (Bethesda), a private Christian University. For ease of reference, and as the parties do themselves, we will refer to one group as the "Kim Board," led by Kyung-Mun Kim (Kim), and the other group as the "Cho Board," led by Suengje Cho (Cho).[1] After the election of six new board members, four of whom were Presbyterian, a dispute arose, which resulted in both the Kim Board and the Cho Board claiming that it was the only legitimate board. The crux of the dispute was that, according to the Kim Board, only adherents of the Pentecostal faith could sit on the board.

This dispute eventually led to a hearing under the Corporations Code to determine the proper leadership of Bethesda. Among other things, the trial court determined that nothing in Bethesda's governing document, its Constitution and Bylaws (Bylaws), prevented a non-Pentecostal Protestant minister from sitting on the board. The court determined that the election that brought the board to a total of 17 members was properly held and valid, and the following individuals were validly elected to the board: Cho, who was board president, Kyong Hwan Ko, Soon Bum Heo, Chi Tae Chung, Kwon Tae Kim, Myung Ho Seo, Dong Hwan-Choi, Eric Choi, Bum Kyu Son, Yoo-Choel Jin, Yong-Joon Kim, Byung-Cho Yang, and Pan Ho Kim.

On appeal, the Kim Board contends that the trial court lacked jurisdiction to decide Bethesda's leadership under the ecclesiastical abstention doctrine and that the court additionally erred in several of its factual findings. We disagree with the Kim Board that the interpretation of Bethesda's governing documents – the very determination that it asked the court to make – invaded the province of ecclesiastical matters. The court was only required to interpret the governing documents, and its factual findings were

---

[1] Some of the names of the individuals involved are inconsistently spelled in the record, most likely due to the romanization of Korean names. We apologize if we have failed to use any preferred spelling.

2

supported by substantial evidence.  We reject the Kim Board's remaining claims of error, and accordingly, we affirm the order.

I

FACTS

According to the Bylaws, members of the board were to be elected for three-year terms and were eligible for reelection.  In the early part of 2021, the membership of the board was not disputed and was composed of 11 members serving staggered three-year terms.

A quorum, defined in the Bylaws as a majority of the members, held a meeting in June 2021, at which they nominated and unanimously elected six new board members, some of whom would subsequently form part of the Cho Board.  This election was held because the terms of several of the board members were due to expire in May 2022.  The new board members expanded the size of the board to 17.

Four of the new board members were Presbyterian rather than Pentecostal – Kwon Tae Kim, Myung Ho Seo, Dong Hwan-Choi, and Eric Choi.  According to the Kim Board, at the meeting, Cho misrepresented to the members present that Bethesda's accrediting agency, the Transnational Association of Christian Colleges and Schools (TRACS), required a diversity of denominations in its leadership, although this was disputed.[2]  The Kim Board asserts this misrepresentation resulted in the election of the four Presbyterian members.  Kyung Moon Kim served as chairperson at the meeting where the election was held.

---

[2] There are three citations to the record the Kim Board relies upon for this point.  One of them is the court's order, which does state that Cho said this.  But the citations to the transcript from the hearing do not reflect this statement.  Cho denied stating diversity of denominations was required under California law, and Kim testified that Cho said that "it was wrong to have the board" constituted only of Pentecostal members.  Kim did not testify that Cho mentioned TRACS or its purported requirements.

Beginning in early 2022, Kim began attempts to remove the non-Pentecostal board members.  At a meeting in February, according to the Kim Board, Cho and the Presbyterian board members objected to the presence of an attorney the Kim Board asserted represented Bethesda and refused to allow the meeting to proceed.  According to the Cho Board, nonmembers were not allowed to attend board meetings without the consent of the other members.

Another meeting was held on April 9.  The minutes reflect that eight board members attended, virtually or in person.  The Kim Board's discussion of this meeting does not include the fact that eight is not a majority of 17.  The minutes reflect that "a quorum (7 out of 11)" were present.  Kim, however, testified he invited all 17 members to the meeting.  The directors at the April 9 meeting held a vote "to confirm that the election of the 6 directors [in June 2021] was void and of no effect."  According to the Kim Board, this effectively removed the four Presbyterian members from the board.

At the next meeting, on April 30, what was now the Kim Board elected six new members:  Pan Ho Kim, Seon Wook Hwang, Young Hoon Lee, Seung Hyun Moon, Chun Soo Kim, and Min Je Cho.  None of the Presbyterian individuals were elected.

On May 24, the Cho Board noticed a board meeting for May 27.  Under the bylaws, regular meetings of the board were to be calendared at the first meeting of the year, and two weeks' notice was required for a specially called meeting.  Seven members of the Cho Board attended the meeting and conducted business.

At a June 2 meeting of the Kim Board, seven board members were reelected, and Pan Ho Kim was elected as president of Bethesda.  Myung Woo Choi and Kyung Hwan Ko were not reelected, and Cho and Soon Bum Heo were removed from the board.

In August 2022, the Cho Board filed a lawsuit on behalf of Bethesda against the Kim Board for fraudulent deceit and breach of fiduciary duty.  The Kim Board, on behalf of Bethesda and Pan Ho Kim, cross-complained, seeking a hearing

4

under Corporations Code section 9418 to determine which board was legitimate. The cross-complaint asked the court to determine that Kyung Moon Kim was the legitimate chair of the board and the Cho Board members were not directors, to void the meetings conducted by the Cho Board, and to enter an injunction to prevent the Cho Board from holding itself "out as directors or in any way affiliated with Bethesda University."

The court scheduled a hearing, and the parties filed briefs. At the hearing, the parties stipulated to the admission of 28 exhibits and the court heard from five witnesses, including Cho and Kim. The parties submitted closing briefs after the hearing.

The court issued a lengthy minute order. The court determined which set of the Bylaws was the genuine and most current governing document. Under the governing Bylaws, the requirements to serve on the board were: "'A high level of spiritual development and integrity defined in terms of Evangelical and Charismatic understanding and style of life. Emphasis is placed on those who have been involved in Christian ministry exhibiting a theology consistent with the theological position of BU. This will be evidenced by their agreement to sign the BU Statement of Faith.'"

Other qualifications included: "'1. A high level of spiritual development defined in terms of Evangelical and Charismatic understanding and style of life. Emphasis is placed on those who have been involved in Christian ministry exhibiting a theology consistent with the theological positions of BU.

'2. A high level of academic preparation that is integral both within the Christian community and also the non-Christian community.

'3. Demonstrable leadership skills within the Christian community. This will be evidenced by showing that the potential Board member has held leadership positions either in a church or parachurch setting for a period of at least two years.

'4. An on-going commitment to ministry within the Christian community. This will be evidenced by the applicant's current membership in a local church or participation in a local church setting.'"

5

The Bylaws set the number of board members between 5 and 30 members. Special meetings required two weeks' notice. The court noted the Bylaws were "poorly drafted, duplicative in many respects, and do not provide the Board Members with the type of guidance one would expect. [¶] One thing, however, is clear: Most of the sections dealing with the qualifications of Board members are aspirational. They do not state, for example, that Directors must possess a certain graduate degree. Nor do they impose a requirement that the Directors only be of the Pentecostal faith, or that they execute the Statement of Faith as a condition of being elected to the Board. The qualifications sections deal almost exclusively with <u>potential</u> members and what Bethesda University is looking for in a Board Member and Director. More importantly, there are no rules that govern how a Board Member may be discharged once elected."

Accordingly, the court reached the following findings:

"1. The court finds that the election that brought the Board to 17 members was properly held and is valid.

"2. The court finds that nothing in the [Bylaws] prevents a 'Protestant' minister, or someone not of the Pentecostal faith, from serving on the Board.

"3. The court finds that there is no requirement in the [Bylaws] that a Board member sign a Statement of Faith to become, or remain, a member of the Board.

"4. The court finds that the special meetings brought to remove the Protestant ministers from the Board were not properly noticed under the provisions of the [Bylaws] and are therefore invalid.

"5. The court finds that the Trustee handbook cannot supersede the rules as stated in the [Bylaws]."

The trial court subsequently signed an order stating, among other things, that the Cho Board was the legitimate board, and Cho was the chair. Further, the special

meetings brought by the Kim Board to remove the Protestant ministers were not properly noticed.[3]

The Kim Board now appeals.

II

DISCUSSION

*Motion to Take Additional Evidence*

Although California """"appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule [8.252(b)] of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances, no such findings should be made*.""" (*Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213.)

The Kim Board asks this court to take the entirety of Bethesda's "Trustees Handbook" (Handbook) as additional evidence on appeal. They argue three grounds qualify as exceptional circumstances. We do not find any of the three grounds persuasive.

First, the Kim Board claims the Handbook demonstrates the trial court lacked jurisdiction to decide whether non-Pentecostals qualify to serve on Bethesda's board. But presumably, additional evidence always puts before the appellate court something the moving party feels is decisive or otherwise critical. This does not qualify as "exceptional." Additionally, the trial court found the Bylaws to be the relevant governing document and specifically ruled the Handbook could not supersede it.

---

[3] The court also directed the board to retain an attorney "to draft a workable Constitution, By-Laws, and/or other governing documents that spell out the rules and regulations that will govern it in the future." (Pursuant to a writ petition by the Kim Board, we stayed this provision of the court's order while this appeal was pending. In the same order, we also deemed the trial court's order an injunction.) The parties did not brief this issue; therefore, we do not comment on it further.

7

Second, the Kim Board argues the "'interests of justice'" support taking this additional evidence, because consideration of the "Handbook will permit this Court to dispose of this matter" in a single appeal and without remand. But again, this is not an "exceptional" circumstance.

The Kim Board's third argument is basically repetitive of its second – that this court's consideration of the Handbook will avoid a remand. Again, this assumes remand is our only recourse here, which is not the case, and in this instance, it does not qualify as exceptional circumstances.

Weighing strongly against the Kim Board is the fact that it admits they had the full Handbook and could have submitted it into evidence at the hearing, as opposed to relying on excerpts. A party's failure to present all the evidence it could have presented in the trial court does not qualify as exceptional circumstances. Further, "[t]he power created by the statute is discretionary and should be invoked sparingly, and *only to affirm the case*." (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 42, italics added.) The Kim Board asks us to take additional evidence not to affirm the case, but to reverse it. We decline to exercise our discretion to do so.

*Standard of Review*

We apply a de novo standard of review to pure questions of law. (*Roberts v. United Healthcare Services, Inc.* (2016) 2 Cal.App.5th 132, 149.) This includes the interpretation of Bethesda's governing documents. (*Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1408-1409 (*Concord Christian*).)

We review the trial court's findings of fact, however, for substantial evidence. "Under that standard, we must consider all the evidence in the light most favorable to the prevailing parties, giving them the benefit of every reasonable inference,

8

and resolving conflicts in support of the judgment." (*Concord Christian*, *supra*, 132 Cal.App.4th at pp. 1408-1409.)

*Ecclesiastical Abstention Doctrine*

Concisely put, the ecclesiastical abstention doctrine, consistent with the First Amendment, prevents courts from involving themselves in doctrinal matters in disputes involving religious bodies.

"The Supreme Court has recognized two principal approaches to deciding church disputes without 'jeopardiz[ing] values protected by the First Amendment.'" (*Puri v. Khalsa* (9th Cir. 2017) 844 F.3d 1152, 1162.) The first approach, which unsurprisingly is the only approach the Kim Board advances, derived from *Watson v. Jones* (1872) 80 U.S. 679 and cases that followed, is simply to "accept[] the decision of the established decision-making body of the religious organization." (*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar* (9th Cir. 1999) 179 F.3d 1244, 1248.) "[W]here resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church . . . but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." (*Serbian Eastern Orthodox, Etc. v. Milivojevich* (1976) 426 U.S. 696, 709.)

The Supreme Court has also recognized, however, that some disputes can be resolved by application of completely secular legal rules. This has been referred to the "'neutral principles of law approach.'" "[T]he First Amendment does not dictate that a State must follow a particular method of resolving church property disputes. Indeed, 'a State may adopt *any* one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith.'" (*Jones v. Wolf* (1979) 443 U.S. 595, 602.) "California

9

courts apply the neutral principles of law approach . . . ." (*Concord Christian*, *supra*, 32 Cal.App.4th at p. 1412.) As long as the court can decide the relevant issues without making determinations about religious doctrine and polity, the court has jurisdiction to, among other things, interpret governing documents. (*Id.* at pp. 1410-1411.) "[I]n applying neutral principles of law, courts may look not only to California corporations law, but also to the religious corporation's bylaws and articles of incorporation, as well as the national church's constitutions, canons, and the like." (*New v. Kroeger* (2008) 167 Cal.App.4th 800, 820.)

The Kim Board, entirely ignoring the fact that it was the entity that sought this relief in the trial court in the first place, now claims that "this case directly turns on the ability of a religious institution—Bethesda University—to impose religious requirements on board members who are responsible for directing its religious and pedagogical mission." It does not. What this case turns on is the interpretation of Bethesda's governing documents. The court's decision seeks only to interpret these documents, not to comment on the ability of Bethesda to draft documents for the future that limit who may serve on its board.

The court's decision reflects only that "nothing in the Constitution and [Bylaws] prevents a 'Protestant' minister, or someone not of the Pentecostal faith, from serving on the Board." Further, the court found that the same documents did not require a board member to "sign a Statement of Faith to become, or remain, a member of the Board." These are no different than other board member requirements commonly found in corporate documents. Either the documents require certain qualifications, or they do not. It does not intrude upon religious or doctrinal matters to read the documents involved and determine what the plain language of the documents states.

The Kim Board brought this case under Corporations Code section 9418, which is part of the Nonprofit Religious Corporation Law. (Corp. Code, § 9411 et seq.) Corporations Code section 9418 has been in existence since 1978 and has never,

10

including in this case, had its constitutionality challenged.  Accordingly, we reject the Kim Board's argument that the trial court lacked jurisdiction to apply neutral principles of corporation law to resolve the dispute before it.

*The Bylaws Do Not Require Board Members to be Pentecostal*

The Kim Board asserts, that as a matter of contract interpretation, the trial court committed error.  We begin by looking to the Bylaws, the relevant governing document.  Under California law, we construe corporate bylaws under the same rules we use to interpret statutes and contracts.  (*Singh v. Singh* (2004) 114 Cal.App.4th 1264, 1294.)  "[W]e must interpret a contract in a manner that is reasonable and does not lead to an absurd result.  [Citation.]  This principle is codified in Civil Code section 1638, which provides:  'The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'  (Civ. Code, § 1638.)"  (*Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 651.)

The Preamble states Bethesda is an "arm of the universal Christian Church" and is a "leadership training ministry which carries out its ministry by providing Biblical Christian higher education for men and women who desire to be leaders in a global society.  Bethesda University's training seeks to build Christian character which will help students to be responsible in applying the claims of Christianity to world problems while developing a Christian world view."  Its "Mission" states that Bethesda "is a Christ-centered community of higher education which aims to prepare students with the academic knowledge, professional skills and spiritual values to become servant leaders in global society."

The word "Pentecostal" is mentioned only once in the Bylaws, as far as we can tell.  Under "Institutional Objectives," Bethesda states it is, among others, "committed to the following goals:  [¶]  Understand theology and society through a Pentecostal Evangelical perspective."  This is specifically phrased as a "goal" and is not

11

included in the section of the Bylaws governing board member qualifications, which it certainly could have been, had the drafters so intended. Indeed, nothing in the section regarding board member qualifications, as quoted above in our discussion of the trial court's order, requires Pentecostal membership.

The Kim Board points to a statement in the Bylaws that board members will "'[s]upport and promote the mission, philosophy, policies, and standards of'" Bethesda, and to a statement in the section addressing board qualifications that "'Emphasis is placed on those who have been involved in Christian ministry exhibiting *a theology consistent with the theological position of [Bethesda]*. This will be evidenced by their agreement to *sign the [Bethesda] Statement of Faith*.'" The Bylaws also states that potential board members "must demonstrate a commitment to the [Bethesda] Statement of Faith."

Emphasis, however, is not the same as a requirement. Put another way: indicating that emphasis will be placed on a certain trait or characteristic in evaluating potential board candidates is not the same as saying that the trait or characteristic is an indispensable requirement of board membership. Moreover, the Kim Board does not argue that it would be impossible for a Presbyterian to be willing to sign, actually sign, or demonstrate a commitment to the Statement of Faith.[4] Accordingly, we cannot determine that the Bylaws, or the Handbook excerpts included in the record, which similarly do not require Pentecostal membership, include unstated requirements. Cho testified that the key requirement for board members was not the church they belonged to, but their commitment to the Bethesda's goals. "Presbyterian or Pentecostal – as long as they are willing to follow Pentecostal ideals, it doesn't matter." We conclude his understanding is supported by the plain language of the Bylaws.

---

[4] We cannot opine further on the Statement of Faith, because if it is included in the record, the Kim Board's opening brief does not provide a citation to it.

12

The Kim Board argues the court may consider evidence outside the Bylaws, including "*church traditions* if sufficiently ascertainable." (*Metropolitan Philip v. Steiger* (2000) 82 Cal.App.4th 923, 932.) While correct, it is not an abuse of discretion to decline to consider this information when the sources of it are members of competing factions with interests to protect. Nor does such evidence need to be considered conclusive or as overriding written governing documents. The same is true of the Handbook – it cannot override the Bylaws.

In sum, our analysis of the Bylaws and the other evidence leads us to the same conclusion as the trial court. While the drafters of Bethesda's Bylaws certainly could have included a requirement that only Pentecostal adherents were eligible, nowhere is such a requirement included, and nothing beyond the plain language of these documents is required to reach this conclusion. Bethesda's board is free to include such a requirement in the future, but the documents in effect at the time of this dispute did not include such a requirement.

*The Kim Board's Fraudulent Inducement Argument*

The Kim Board next contends that if jurisdiction exists, the trial court erred by failing to find that Cho's statements at the June 2021 meeting "fraudulently induced" their vote. This is an issue of whether substantial evidence exists to support the order.

But this does not appear to have been properly before the trial court. The Kim Board's cross-complaint was solely for a hearing under the Corporations Code. Fraudulent inducement was not mentioned in the cross-complaint. The issue of what Cho said appears to have been raised for the first time in a footnote in the Kim Board's trial brief, without using the words "fraudulent inducement." We agree with the Cho Board that fraud should have been pleaded in the cross-complaint if the Kim Board intended to raise it, and it should have met the usual requirement to plead fraud with specificity. (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1028.)

13

Even if the court chose to consider this argument, there was substantial evidence to support the trial court's implied ruling that any misstatements by Cho did not rise to the level of fraudulent inducement. The evidence is not as clear-cut as the Kim Board suggests. In support of its claim that Cho stated "that TRACS required the Board to have non-Pentecostal members," the Kim Board cites Cho's testimony, which stated: "I said it's TRAC [*sic*] that requires diversity of – and I think it was – actually – it's long story." There was no follow up on this point. Kim's cited testimony on this point was that "Cho said that since Bethesda University is a nonprofit corporation, it was *wrong* to have the Board of Directors constituted only by" Pentecostals. (Italics added.) This is the only testimony on which the Kim Board relied at the hearing, and neither of these pieces of testimony compel a finding that Cho fraudulently misrepresented this fact. "[I]t's a long story" and "it was wrong" are not the same thing as "TRACS requires" this.[5] Evidence of other elements of fraudulent inducement are also lacking, including causation and harm. There was substantial evidence to support the trial court's implied finding that fraudulent inducement sufficient to require voiding the election did not occur.

*Properly Noticed Board Meetings*

The Kim Board next complains the trial court improperly found that its April and June 2022 meetings were improperly noticed. This is an issue of substantial evidence. Even if we were to find error here, however, it would not warrant remand in light of the trial court's ruling that the Kim Board was not the validly elected board of Bethesda during this time period. Further, the disputed meetings lacked a quorum of legitimate board members. Even under the best interpretation of the evidence for the Kim Board, only eight of the 17 members attended the April meeting. That does not

---

[5] The trial court's comment that Cho said otherwise is not supported by the record, and the Kim Board does not provide further citations to the record in support of this assertion.

14

constitute a majority of the board, and as we are affirming the court's decision that the members of the Cho Board were legitimately elected, that was not a quorum.

The June meeting included the "replacement" board members who were added at the April meeting held without a quorum. Only seven legitimate members attended the June meeting. This, too, was not a quorum. Accordingly, any error regarding notice was harmless; the board lacked the power to act at either meeting, and whether due to notice or lack of quorum, the result is the same.

The Kim Board's argument that the May 27, 2022 meeting by the Cho Board was improperly noticed is not addressed in the court's order. The Kim Board cites to two pages of the record, but neither includes any mention of this meeting or the issue of notice. Accordingly, we need not consider it.

III

DISPOSITION

The court's order is affirmed. The Cho Board is entitled to its costs on appeal. The partial stay issued on May 16, 2023, is dissolved.

MOORE, ACTING P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.

15